UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| RLI INSURANCE COMPANY : | |
| : | |
| Plaintiff, : | |
| v. : | |
| : | CIVIL ACTION NO. |
| ACCEL COMPLIANCE LLC : | |
| : | |
| Defendant. : | |

## COMPLAINT FOR DECLARATORY JUDGMENT

In support of this Complaint for Declaratory Judgment, Plaintiff RLI Insurance Company ("RLI") respectfully states:

1. This is an action for declaratory judgment under 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57. There exists an actual and justiciable controversy regarding the rescission of a liability insurance policy issued by RLI to Defendant ACCEL Compliance LLC ("ACCEL"); coverage under the policy for claims against ACCEL; and/or reimbursement of any RLI payments of ACCEL's defense costs made subject to a reservation of rights.

## PARTIES

2. RLI is an insurance company incorporated and existing under the laws of the State of Illinois with its principal place of business in Illinois.

3. ACCEL is a limited liability company organized and existing under the laws of the State of Connecticut with its principal place of business in Connecticut. Upon information and belief, the members of ACCEL are citizens of the State of Connecticut.

## JURISDICTION AND VENUE

4. This action concerns ACCEL's claim for defense and indemnity under a liability insurance policy issued by RLI.

5. ACCEL seeks defense and indemnity in connection with claims asserted against it for approximately $35,120,376.70.

6. RLI and ACCEL are citizens of different states.

7. This Court has original jurisdiction over this action under 28 U.S.C. § 1332(a), because the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity of citizenship between the parties.

8. Venue is proper in this District under 28 U.S.C. § 1391(b), because ACCEL is a citizen of Connecticut, a substantial part of the events and/or omissions giving rise to the claims at issue in this action are situated in Connecticut, and ACCEL is subject to personal jurisdiction in Connecticut.

## FACTS

9. In or about April 2023, ACCEL entered into an agreement with Great Point Insurance Services, Inc. ("Great Point") in which ACCEL agreed to coordinate registered agent services for Great Point's clients with preferred vendors.

10. In or about November 2023, ACCEL entered into an agreement with InCorp Services, Inc. ("InCorp") in which InCorp agreed to provide registered agent services for ACCEL.

11. Pursuant to the ACCEL-InCorp Agreement, InCorp was the registered agent of service for Paramount Real Estate Group, Inc. ("Paramount").

**Missouri Lawsuit**

12. Paramount was named as a defendant in the Third Amended Petition filed in connection with a lawsuit entitled *Ana Fuentes, et al. v. KM-T.E.H. Realty 8, LLC, et al.*, Jackson County, Missouri, Case No. 2016-CV19826 ("Missouri Lawsuit").

13. On December 4, 2023, the Plaintiffs in the Missouri Lawsuit delivered to InCorp a copy of the Third Amended Petition as service on Paramount.

14. The Plaintiffs filed an Affidavit of Service on December 11, 2023, attesting that Maureen Anderson of InCorp had accepted service of the Third Amended Petition.

15. On April 25, 2024, the Plaintiffs in the Missouri Lawsuit filed a Motion for Default Judgment Against Defendant Paramount Real Estate Group Inc. ("Default Motion").

16. On June 18, 2024, the Court issued an Order granting the Default Motion and entered judgment for Plaintiffs in the amount of $35,120,376.70 ("Default Judgment").

17. On or about August 16, 2024, ACCEL was notified that it allegedly failed to forward the Third Amended Petition to Paramount.

18. In connection with the Missouri Lawsuit, Neely Winters, an Assistant Compliance Manager for ACCEL, submitted an Affidavit dated September 5, 2024. Attached hereto as Exhibit 1 is a copy of the September Affidavit.

19. The September Affidavit states that "[w]hen Incorp accepts service on behalf of Paramount, it sends an email notification of service of process to ACCEL Compliance, and then the standard protocol is for ACCEL Compliance to log onto the Incorp dashboard, download the documents, and forward the email message and all associated documents to Paramount." (Ex. 1, ¶ 6).

20. The September Affidavit states that "Incorp sent an email notification to ACCEL Compliance and uploaded the documents to the dashboard for ACCEL Compliance." (Ex. 1, ¶ 7).

21. The September Affidavit states that "ACCEL Compliance inadvertently overlooked the notification email that service of process was received by Incorp." (Ex. 1, ¶ 8).

22. The September Affidavit states that "due to ACCEL Compliance's inadvertent mistake, Paramount did not receive notice of the lawsuit at any time prior to June 12, 2024, through no fault of its own." (Ex. 1, ¶ 13).

23. In connection with the Missouri Lawsuit, Ms. Winters submitted a second Affidavit dated October 28, 2024. Attached hereto as Exhibit 2 is a copy of the October Affidavit.

24. The October Affidavit states that Ms. Winters determined she "was the employee at ACCEL Compliance that failed to forward the notification of service and related legal documents to Paramount because there was no corresponding sent email transmitting the documentation to Paramount in [her] sent email folder on [her] computer." (Ex. 2, ¶ 6).

25. The October Affidavit states that "[t]his was an inadvertent mistake where [Ms. Winters] accidentally overlooked the notification and failed to pass it along to Paramount." (Ex. 2, ¶ 6).

26. On December 31, 2024, the Court issued an Order that denied Paramount's Motion to Set Aside Order Granting Plaintiffs' Motion for Default Judgment.

27. On October 9, 2025, the Court entered a Judgment that denied Paramount's Motion to Set Aside Default Judgment, denied Paramount's Motion to Reconsider, incorporated the Default Judgment entered on June 18, 2024, and deemed a final judgment entered in favor of Plaintiff and against Paramount.

28. On October 9, 2025, the Court also separately issued an Order that denied Paramount's Motion to Amend the Order Denying Motion to Set Aside and entered judgment pursuant to the Order Denying the Motion to Set Aside contemporaneously with the Order.

29. On November 18, 2025, Paramount filed a Notice of Appeal in the Missouri Action.

30. On December 1, 2025, the Court denied Paramount's Rule 74.06(b)(4) Motion to Vacate or Set Aside Default Judgment.

**RLI Policy**

31. RLI issued an insurance policy to ACCEL, bearing policy number RTP0045531, with a policy period of January 1, 2025, to January 1, 2026 ("RLI Policy"). Attached hereto as Exhibit 3 is a certified copy of the Policy.

32. The RLI Policy is a claims made and reported miscellaneous professional liability policy with Limits of Liability of $3,000,000 for each Claim and $3,000,000 for the Policy Year Aggregate, pursuant to the terms and conditions of the Split Retroactive Date Limits of Liability endorsement and other Policy provisions.

33. The RLI Policy provides:

    **1. INSURING AGREEMENTS**

        a. The insurer will pay on behalf of the **Insured**, **Claim Expenses** and **Damages** in excess of the Deductible that the **Insured** shall become obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** and first reported to the Insurer during the **Policy Period**, the Automatic Extended Reporting Period, or if applicable, during the Extended Reporting Period, for **Wrongful Acts**, committed on or subsequent to the **Retroactive Date** and before the end of this **Policy Period**, to which this insurance applies.

      b.      The Insurer will pay on behalf of the **Insured**, **Claim Expenses** and **Damages** in excess of the Deductible that the **Insured** shall become legally obligated to pay because of **Claims** first made against the **Insured** during the **Policy Period** and first reported to the Insurer during the **Policy Period,** the Automatic Extended Reporting Period, or if applicable, during the Extended Reporting Period, alleging **Third Party Discrimination,** committed on or subsequent to the **Retroactive Date** and before the end of this **Policy Period,** to which this insurance applies.

(Ex. 3, RTP 101 (02/17), Page 1 of 10, ¶ 1).

34.    The RLI Policy provides:

    **4.**    **DEFINITIONS**

    When used in this Policy:

    …

    **"Circumstance"** means any fact, situation, event or occurrence that could reasonably be the basis for a **Claim**.

(Ex. 3, RTP 101 (02/17), Page 3 of 10, ¶ 4).

35.    The RLI Policy provides:

    **4.**    **DEFINITIONS**

    When used in this Policy:

    …

    **"Claim"** means:

    a.    a demand for money as compensation for a **Wrongful Act;** or

    b.    any civil judicial or administrative proceeding, including a **Disciplinary Proceeding,** mediation or arbitration initiated against any **Insured** seeking to

> hold such **Insured** responsible for a **Wrongful Act,** including any appeal therefrom; or
>
> c.   any request to toll the statute of limitations relating to a **Wrongful Act.**
>
> A **Claim** shall be considered first made when any **Insured** or the **Insured's** legal representative or agent first receives notice of the **Claim.**

(Ex. 3, RTP 101 (02/17), Page 3 of 10, ¶ 4).

36.   The RLI Policy provides:

> The **Insureds** agree that this Policy, including the Application, attachments and any endorsements, constitutes the entire agreement between the **Insureds** and the Insurer or any of its agents relating to this insurance.

(Ex. 3, RTP 101 (02/17), Page 10 of 10, ¶ 23).

37.   ACCEL is the Named Insured under the RLI Policy.

38.   As the Named Insured, ACCEL qualifies as an "Insured," as defined by the RLI Policy.

### Application for RLI Policy

39.   Prior to the issuance of the RLI Policy, ACCEL submitted a Renewal Application to RLI. (Ex. 3, RTP 202 (04/22), Pages 1-3).

40.   The Renewal Application was signed by ACCEL's President, Michael Griffin, on October 29, 2024, one day after Ms. Winters signed the October Affidavit. (Ex. 3, RTP 202 (04/22), Page 3 of 3).

41.   Question 4 of the Renewal Application requested: "List all professional services for which coverage is desired." (Ex. 3, RTP 202 (04/22), Page 1 of 3).

42. In response to Question 4, ACCEL declared: "Insurance regulatory licensing and compliance, with a primary emphasis on agents, brokers, surplus lines, brokers, adjuster and third party administrators." (Ex. 3, RTP 202 (04/22), Page 1 of 3).

43. ACCEL declared that the professional services identified in the Renewal Application comprised 100% of its revenue. (Ex. 3, RTP 202 (04/22), Page 1 of 3).

44. Question 9 of the Renewal Application asked: "After inquiry, do any partners, members, directors, or officers for the firm for which coverage is sought, have knowledge of any incident, a circumstance, an event, or unresolved fee dispute that may result in a claim?" (Ex. 3, RTP 202 (04/22), Page 1 of 3).

45. Question 9 further stated that "Claim(s) means a demand received by the Insured for money or services and which alleges a wrongful Act. Claim(s) includes but is not limited to lawsuits, petitions, arbitrations or other alternative dispute resolution requests filed against the Insured." (Ex. 3, RTP 202 (04/22), Page 1 of 3).

46. Griffin checked "No" in response to Question 9. (Ex. 3, RTP 202 (04/22), Page 1 of 3).

47. The Renewal Application contains the following declaration: "I declare that if the firm or any of its members become aware of any information that would change answers furnished in the application, the firm will reveal such information in writing to the Company prior to the effective date of coverage. On behalf of the applicant firm, I declare that this application, including attachments, supplementary pages and other exhibits attached, is complete and correct." (Ex. 3, RTP 202 (04/22), Page 3 of 3).

48. At the time Griffin signed the Renewal Application on October 29, 2024, he was aware that ACCEL had received notification that it allegedly failed to forward the Third Amended Petition to Paramount.

49. At the time Griffin signed the Renewal Application on October 29, 2024, he was aware that Ms. Winters had submitted the September Affidavit and the content of the affidavit.

50. At the time Griffin signed the Renewal Application on October 29, 2024, he was aware that Ms. Winters had submitted the October Affidavit and the contents of the affidavit.

51. At the time Griffin signed the Renewal Application on October 29, 2024, he was aware of a Circumstance that could give rise to a Claim.

52. ACCEL did not provide notice of its alleged failure to forward to Paramount the Third Amended Petition before the issuance of the RLI Policy.

53. Based on the representations ACCEL made in the Renewal Application, RLI issued the RLI Policy.

### Claim that ACCEL Tenders to RLI

54. Great Point sent a letter to ACCEL dated June 2, 2025, asserting that ACCEL was responsible for coordinating registered agent services for Great Point (the "Demand Letter").

55. In the Demand Letter, Great Point states that it holds ACCEL responsible for any liability and costs Great Point incurs as a result of the Default Judgment entered against Paramount.

56. On June 5, 2025, ACCEL tendered the Demand Letter to RLI under the RLI Policy in connection with ACCEL's alleged failure to forward to Paramount the Third Amended Petition (the "Claim").

57. On September 26, 2025, RLI sent a letter to ACCEL informing ACCEL that RLI would defend ACCEL in connection with the Claim, subject to the Deductible, the terms and conditions of the RLI Policy, and a reservation of rights as set forth therein (the "Reservation of Rights Letter").

58. The Reservation of Rights Letter included, among other things, a reservation of the right to file a declaratory judgment action to determine the extent to which coverage is available under the RLI Policy.

59. The Reservation of Rights Letter included, among other things, a reservation of the right to seek rescission of the RLI Policy.

## COUNT I

**(Rescission)**

60. RLI repeats and incorporates herein by reference the allegations in the preceding paragraphs.

61. ACCEL knew, prior to submitting the Renewal Application, that ACCEL failed to forward the Third Amended Petition to Paramount.

62. ACCEL also knew, prior to submitting the Renewal Application, that a Default Judgment had been entered against Paramount in the Missouri Lawsuit.

63. ACCEL was also aware, prior to submitting the Renewal Application, that Paramount had retained counsel and asked ACCEL to submit the September Affidavit and the October Affidavit.

64. By at least October 29, 2025, ACCEL was aware of an incident, circumstance, or event that may result in a Claim.

65. ACCEL knew, at the time it submitted the Renewal Application, that its declaration that it had no knowledge of any incident, circumstance, event, or unresolved fee dispute that may result in a claim was false.

66. Alternatively, ACCEL made the misrepresentation in the Renewal Policy with the intent to deceive RLI and induce it to issue the RLI Policy.

67. ACCEL failed to supplement the Renewal Application or otherwise disclose to RLI the existence of the allegation that ACCEL failed to forward the Third Amended Petition to Paramount prior to the date the RLI Policy became effective on January 1, 2025.

68. ACCEL's misrepresentation in response to Question 9 of the Renewal Application was a material fact that RLI relied upon to its detriment in issuing the RLI Policy.

69. RLI would not have issued the RLI Policy to ACCEL under the same terms and conditions but for ACCEL's misrepresentation in the Renewal Application.

70. RLI is entitled to and seeks a judicial declaration that the RLI Policy is rescinded due to ACCEL's false statement in response to Question 9 of the Renewal Application.

71. There exists an actual and justiciable controversy regarding the rescission of the RLI Policy.

## COUNT II

### (Rescission)

72. RLI repeats and incorporates herein by reference the allegations in the preceding paragraphs.

73. ACCEL knew, prior to submitting the Renewal Application, that it had agreed to coordinate registered agent services for Great Point's clients with preferred vendors.

74. ACCEL knew, prior to submitting the Renewal Application, that it derived revenue from the agreement with Great Point concerning registered agent services.

75. ACCEL failed to disclose, in the Renewal Application, that it provided registered agent services and derived revenue therefrom.

76. Alternatively, ACCEL failed to disclose that it provided registered agent services and derived revenue therefrom with the intent to deceive RLI and induce it to issue the RLI Policy.

77. ACCEL's failure to disclose that it provided registered agent services and derived revenue therefrom was a material fact that RLI relied upon to its detriment in issuing the RLI Policy.

78. RLI would not have issued the RLI Policy to ACCEL under the same terms and conditions but for ACCEL's failure to disclose that it provided registered agent services and derived revenue therefrom.

79. RLI is entitled to and seeks a judicial declaration that the RLI Policy is rescinded.

80. There exists an actual and justiciable controversy regarding the rescission of the RLI Policy as to which RLI has no adequate remedy at law.

## **COUNT III**

**(No Duty to Defend)**

81. RLI repeats and incorporates herein by reference the allegations in the preceding paragraphs.

82. As set forth in Count I and Count II, RLI is entitled to a judicial declaration that the RLI Policy is rescinded.

83. Count III asserts, in the alternative, that even if the RLI Policy is determined to be in effect, ACCEL is not entitled to defense, indemnity, or any other coverage for the Claim.

84. The RLI Policy provides coverage, subject to its full terms and conditions, only for Claims that allege a Wrongful Act.

85. The RLI Policy defines Wrongful Act to mean, in part, "any actual or alleged error, omission or negligent act, committed solely in the rendering of or failure to render **Professional Services** by an **Insured** or any person or entity for which the **Insured** is legally liable."

86. The RLI Policy further defines Wrongful Act to mean, in part, "any actual or alleged error, omission or negligent act committed solely in the rendering of or failure to render **Professional Services** by an **Insured** or any person or entity for which the **Insured** is legally liable and that results in **Personal Injury**."

87. The RLI Policy states that Professional Services are "Solely in the performance of providing Compliance Consulting Services."

88. The Claim involves allegations against ACCEL arising out of registered agent services.

89. As noted in Count II, ACCEL should have disclosed registered agent services in response to Question 4 of the Renewal Application. RLI alleges, in the alternative, registered agent services do not qualify as Professional Services, as that phrase is used in the RLI Policy.

90. RLI is entitled to a judicial declaration that it has no obligation to defend, indemnify, or otherwise provide coverage to ACCEL under the RLI Policy for claims arising out of the Missouri Lawsuit, because the Claim does not involve a Wrongful Act, as that term is defined by the RLI Policy.

91. There exists an actual and justiciable controversy regarding the availability of coverage under the RLI Policy for claims against ACCEL arising from the Missouri Lawsuit.

## COUNT IV

### (Unjust Enrichment)

92. RLI repeats and incorporates herein by reference the allegations in the preceding paragraphs.

93. RLI has agreed to defend ACCEL in connection with the Claim subject a reservation of rights.

94. RLI's reservation of rights letter expressly reserves the right to seek reimbursement of defense costs paid.

95. ACCEL is benefiting from RLI's agreement to pay defense costs subject to a reservation of rights.

96. ACCEL's retention of any benefits conferred by RLI payments of defense costs is unjust, because the RLI Policy is rescinded and/or does not cover the Claim.

97. RLI has suffered a loss as a result of its agreement to pay defense costs for the Claim subject to a reservation of rights.

## PRAYER FOR RELIEF

WHEREFORE, RLI prays for judgment as follows:

A. A declaration that the RLI Policy is rescinded;

B. A declaration that the Claim does not trigger a duty to defend and/or indemnify ACCEL under the RLI Policy;

C. A declaration that ACCEL has been unjustly enriched by any RLI payments of defense costs for the Claim and that RLI is entitled to reimbursement for all such payments; and

D. Such other and further relief as is just and proper.

        Respectfully submitted,

        PLAINTIFF RLI INSURANCE COMPANY,

        By its attorneys,

        */s/ Jonathan E. Small*
        Jonathan E. Small (Bar No. 29841)
        Robinson & Cole LLP
        One State Street
        Hartford, CT 06103-3597
        Tel. No.: (860) 275-8200
        Fax No.: (860) 275-8299
        E-mail: jsmall@rc.com

Dated: December 16, 2025