UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| RLI INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>ACCEL COMPLIANCE LLC<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Case No. 3:25-cv-02097-KAD |

**DEFENDANT ACCEL COMPLIANCE LLC'S**
**<u>REPLY IN SUPPORT OF MOTION TO STAY PROCEEDINGS</u>**

Defendant Accel Compliance ("ACCEL") hereby submits this Reply in Support of its Motion to Stay Proceedings (ECF Nos. 19, 20, the "Stay Motion" and "Stay Memo," respectively), and in response to the opposition (ECF No. 23, the "Stay Opp.") filed by Plaintiff RLI Insurance Company ("RLI")

## I. INTRODUCTION

RLI does not dispute ACCEL's contention that there are pending and undecided proceedings in Missouri that may eliminate the Missouri Default Judgment[1] entirely—mooting this action or drastically reducing its scope. This action should either be stayed entirely or stayed with respect to all discovery to prevent the parties from incurring substantial unnecessary costs to inquire into issues that may ultimately prove irrelevant.

RLI's opposition improperly attempts to recast this action as a narrow freestanding application-rescission case that can proceed in a vacuum without regard to the Missouri proceedings. ACCEL does not contend that every element of RLI's rescission counts will automatically be decided by the Missouri appellate court. Rather, ACCEL's point is that the

[1] Except where defined in this memorandum, capitalized terms have the same meaning as they did in the Stay Motion.

Missouri Default Judgment, which is under attack and may be set aside in its entirety, is the pleaded factual predicate for the alleged "circumstance," the alleged "Claim," the alleged damages exposure, RLI's reimbursement claim, and the practical materiality theory on which RLI relies. If the Missouri Default Judgment is vacated or reversed, the claims and discovery in this case will be substantially narrowed, altered, or potentially eliminated. Proceeding now would require the parties and the Court to litigate rescission, coverage, reimbursement, and underwriting issues against a moving target. Accordingly, ACCEL respectfully requests this Court GRANT its Motion to Stay.

## II. ARGUMENT

### A. The Missouri Appeal Is Central to the Claims and Issues Before This Court

#### i. RLI's Complaint and Course of Conduct Confirm That Its Claims Are Tied to the Missouri Default Judgment

At page 5 of the Stay Opp., RLI argues that its rescission claims are "independent" of the outcome of the Missouri Default Judgment. However, this position is inconsistent with its position in the Complaint.

"Under Connecticut law, an insurance policy may be voided by the insurer if the insurer can establish that there was (1) a misrepresentation by the insured on the application which was (2) knowingly made and (3) material to the insurer's decision whether to insure." Westport Ins. Corp. v. Laschever, No. 3:06 CV 519 (WWE), 2008 WL 4426899, at *7 (D. Conn. Sept. 26, 2008). Here, both the alleged misrepresentation and its purported materiality derive from the Missouri Default Judgment.

RLI alleges that ACCEL failed to disclose a "circumstance" that could give rise to a claim. ECF No. 1 at ¶¶ 44, 46, 51, 64. Yet the only circumstance identified in the Complaint is ACCEL's alleged failure to forward service of process in the Missouri Lawsuit and the resulting Default

Judgment entered against Paramount. Id. at ¶¶ 16, 48–52, 61–62. RLI further alleges that ACCEL's knowledge of both the service issue and the Default Judgment created the duty to disclose. Id. at ¶¶ 61–64. Notably, RLI identifies no separate omission or circumstance supporting rescission.

Likewise, the "Claim" ACCEL tendered to RLI exists solely because of the Missouri Default Judgment. The "Claim" ACCEL tendered to RLI seeks to hold ACCEL responsible for liabilities and costs "as a result of the Default Judgment entered against Paramount." Id. at ¶¶ 55-56. Thus, without the Missouri Default Judgment, there would be no "Claim."

RLI's own course of conduct further confirms this point. Although the underlying service issue arose in 2023 and the relevant affidavits were submitted in 2024, RLI did not seek rescission until after the Default Judgment was entered and Paramount's efforts to vacate it were denied. Id. at ¶¶ 16, 26–30. Without the Missouri Default Judgment, there would be no present "Claim" nor coverage dispute. And even after RLI filed this case, it filed two motions to extend ACCEL's deadline to file its responsive pleading and a motion to extend their own deadline to file their response to ACCEL's Motion to Stay Proceedings. ECF Nos. 15, 17, 21. This clearly indicates that RLI itself was uncertain regarding this action in light of the pending appeal and the contingent nature of its claims.

Count II does not alter this analysis. Although framed as an independent basis for rescission, Count II identifies no risk arising from ACCEL's procuring registered agent services[2] apart from the same service-of-process issue that resulted in the Missouri Default Judgment. As pleaded, the only alleged liability exposure tied to ACCEL's coordinating registered-agent activities is the failure to forward service of process in the Missouri action and the resulting $35 million Default Judgment. Id. at ¶¶ 16, 48–52, 55–56. The alleged omission is therefore "material"

---

[2] It must be emphasized that ACCEL never itself served as a registered agent for anyone, and Paramount's registered agent was another entity—InCorp Services, Inc. Stay Memo at 1.

only because it purportedly gave rise to the claim ACCEL tendered to RLI. If the Missouri Default Judgment is vacated or reversed on appeal, the significance of that omission necessarily changes as well.

Simply put, the Missouri Default Judgment is not merely background context—it is the factual foundation of RLI's rescission claims. Until the Missouri appellate court determines whether that judgment remains viable, proceeding with this litigation risks expending substantial resources on claims whose scope may materially change.

RLI's contrary argument at pages 5-7 of the Stay Opp. overstates what can be decided now. At most, RLI has alleged that ACCEL's renewal answers were material; it has not established materiality. That distinction matters on a motion to stay. The question before the Court is not whether RLI may ultimately attempt to prove rescission, but whether this litigation should proceed before the antecedent Missouri appeal determines whether the $35.1 million judgment, the central event animating RLI's Complaint, survives at all.

**ii. Materiality Cannot Be Evaluated in Isolation from the Missouri Appeal**

RLI's opposition likewise ignores a fundamental element of its rescission claims: materiality. To prevail on rescission, RLI must establish not only that ACCEL allegedly failed to disclose a circumstance that could give rise to a claim, but also that the omission was material to RLI's decision to issue coverage. The Missouri Default Judgment bears directly on that issue.

Here, the alleged risk is defined entirely by the Missouri Default Judgment and the liability exposure that flows from it. Connecticut law confirms that materiality turns on whether the undisclosed information would have "so increase[d] the degree or character of the risk of the insurance as to substantially influence its issuance, or substantially affect the rate of the premium."

F.D.I.C. v. Great Am. Ins. Co., 603 F. Supp. 2d 344, 352 (D. Conn. 2009). That inquiry necessarily depends on the nature and magnitude of the risk the insurer claims it assumed.

If the Missouri Default Judgment is vacated or reversed on appeal, the "circumstances" RLI contends should have been disclosed may never ripen into a viable liability claim against ACCEL, and the risk RLI alleges it unknowingly undertook will be fundamentally different. Even if the judgment is affirmed, that would not automatically establish a covered claim against ACCEL or resolve RLI's rescission theory. Additional factual and legal determinations would remain, including whether any alleged delay in transmitting service was a proximate cause of the judgment, whether Paramount's own conduct, including its alleged decision not to appear at the default judgment hearing after receiving notice, breaks or materially affects any causal chain, whether Paramount or any other party has a viable claim against ACCEL, and what damages, if any, are attributable to ACCEL's alleged conduct. Those issues bear directly on the existence, scope, and value of the alleged claim; the factual basis for RLI's asserted damages and reimbursement theories; and the extent to which discovery concerning underwriting, materiality, claim severity, and causation remains necessary. Accordingly, even if the appeal does not dispose of every count, it is likely to materially narrow the issues in dispute and weighs strongly in favor of a stay.

This is not a pure rescission case in which the alleged misrepresentation can be evaluated in a vacuum. RLI's Complaint ties materiality to sequence of events: beginning with the Missouri service issue, continuing through the Missouri Default Judgment, and culminating in the threatened claim against ACCEL. Until the Missouri Default Judgment appeal is resolved, the

parties and the Court will be litigating materiality and related issues against a factual backdrop that may materially change.

**B. The Balance of Hardships Weighs in Favor of a Stay**

**i. RLI's Claimed Prejudice Is Insufficient as a Matter of Law**

RLI argues at page 7 of the Stay Opp. that a stay would prejudice it because it is currently funding the "defense obligations" of the Missouri Default Judgment. This argument fails because Paramount has not filed any lawsuit against ACCEL and defense costs, without more, do not constitute prejudice sufficient to defeat a motion to stay.

Connecticut courts have expressly rejected the argument that a stay should be denied on the basis that it will delay discovery or prolong an insurer's payment of defense costs. City of Danbury v. Connecticut Interlocal Risk Mgt. Agency, No. X01980166984, 2001 WL 1200890, at *4 (Conn. Super. Sept. 14, 2001). The court characterized both objections as "insubstantial," explaining that evidence would be preserved through the underlying litigation, and if the insurer was ultimately found to have no coverage obligation, any defense costs paid could be recovered from the insured. Id.

RLI advances the same asserted bases of prejudice as the insurers in City of Danbury, and for the same reasons articulated in that decision, those arguments do not constitute prejudice sufficient to warrant denial of a stay. RLI voluntarily undertook the defense subject to a reservation of rights. Its ongoing defense costs are a consequence of that strategic choice, not cognizable prejudice that outweighs ACCEL's interest in a stay. Additionally, panel counsel has not submitted any invoices to ACCEL, even though the policy includes a $2,500 deductible, confirming that either no or a de minimis amount of defense costs have been incurred to date, rendering RLI's argument moot. This is not surprising since, to date, Paramount has not initiated any proceedings

against ACCEL. In any event, RLI's reservation of rights preserves its ability to seek reimbursement of defense costs should rescission ultimately be granted, meaning any financial exposure from continued defense is recoverable and does not constitute irreparable harm.

**ii. ACCEL Faces Substantial Prejudice if Forced to Litigate Before the Missouri Appeal Is Resolved**

RLI minimizes the prejudice ACCEL will suffer if this action proceeds while the Missouri appeal remains pending. That prejudice, however, is straightforward. ACCEL will be forced to litigate a rescission action premised on the significance of a judgment that may be materially altered or reversed on appeal.

RLI also mischaracterizes ACCEL's position regarding RLI's "dual role" in simultaneously defending under a reservation of rights while prosecuting this coverage action. At page 7 of the Stay Opp., RLI relies on Nash St., LLC v. Main St. Am. Assurance Co., 337 Conn. 1 (2020), for the general proposition that an insurer may defend under a reservation of rights while pursuing a declaratory judgment action to resolve coverage uncertainty. However, RLI selectively relies on that language without regard to context. Nash does not deal with a situation where the liability and coverage facts overlap. Rather, it concerned whether an insurer owed a duty to defend an underlying action—an entirely distinct issue from the rescission claim at issue here.

Here, by contrast, RLI is not defending ACCEL in a pending liability action under a reservation of rights, as was the case for Nash. No lawsuit has been filed against ACCEL. Instead, RLI is providing defense advice and counsel in response to a notice from Paramount's counsel arising from the Missouri Default Judgment while simultaneously seeking rescission based on facts stemming from those same underlying events. In doing so, RLI is necessarily incentivized to develop facts favorable to its rescission position, creating an inherent conflict with its obligation to provide a fair and uncompromised defense to ACCEL. This conflict supports a stay. Nash neither

addressed nor endorsed this circumstance, and in any event, the decision to grant a stay is a case-specific determination committed to the court's discretion. Knapp v. American Cruise Lines, Inc., 2018 WL 5263275 at 17 (D. Conn. 2018); See also Landis v. N. Am. Co., 299 U.S. 248, 254 (1936).

The conflict is not theoretical. To prosecute rescission, RLI has every incentive to characterize ACCEL's alleged conduct, knowledge, and omissions in a manner that maximizes perceived fault, claim severity, and underwriting materiality. But ACCEL's defense interests are served by preserving the position that Paramount had notice of the default judgment hearing, chose not to attend, and that any alleged service-related issue did not proximately cause a collectible $35.1 million loss. Those positions are in tension. A stay avoids forcing ACCEL to litigate against its own insurer on overlapping factual issues while the Missouri appeal remains pending.

### C. Judicial Economy Strongly Supports a Stay Because the Appeal May Eliminate or Substantially Narrow This Action

Contrary to RLI's arguments at pages 6 and 8 of the Stay Opp., it is in the interest of the court to grant the Motion to Stay. In City of Danbury v. Connecticut Interlocal Risk Mgt. Agency, No. X01980166984, 2001 WL 1200890, at *3 (Conn. Super. Sept. 14, 2001), the court held that judicial economy is served by staying a coverage action pending resolution of the underlying action where "the issues, facts, and number of claims to be decided in this case may be fewer and the amounts at issue and duration of the trial of the insurers' declaratory judgment action may be reduced" depending on the outcome of the underlying proceedings. The court further explained that, absent a stay, it may unnecessarily expend judicial resources managing discovery and adjudicating declaratory judgment claims tied to issues that may ultimately be narrowed or eliminated in the underlying action. Id.

The same considerations apply here. If the Missouri Default Judgment is vacated or reversed, the factual and legal predicates for RLI's claims will be eliminated or substantially

altered, narrowing the scope of this action as a whole. A stay therefore preserve resources and promotes efficient case management.

RLI's attempt at pages 6-7 of the Stay Opp. to distinguish the authorities cited in ACCEL's principal brief because they are not factually identical misses the governing point. A stay does not require a case with identical facts; it requires a practical assessment of hardship, prejudice, and judicial economy. Here, the Missouri appeal is not collateral background litigation. It is the proceeding that will determine whether the judgment that generated the tendered demand, the claimed exposure, and the reimbursement theory remains intact. That is precisely the kind of antecedent proceeding that justifies temporary docket control.

At minimum, if the Court is not inclined to stay the entire action, it should stay discovery pending the Missouri appeal. While RLI would prefer to narrow discovery to the topics it lists at page 8 of the Stay Opp., fairness to ACCEL (if this matter proceeds without a stay) would require inquiry into broader issues, including service-of-process events, the Default Judgment, underwriting materiality, coordinating registered-agent services, claim severity, and defense-cost reimbursement. Those issues are either directly tied to the Missouri Default Judgment or will be substantially narrowed if that judgment is vacated. A discovery-only stay would preserve RLI's ability to pursue its claims later while avoiding immediate, unnecessary, and potentially prejudicial discovery now. A stay would also promote judicial economy and efficiency, as opposed to bifurcated discovery.

## III. CONCLUSION

Based upon the foregoing, Defendant ACCEL Compliance LLC respectfully requests this Court GRANT its Motion to Stay Proceedings pending the resolution of the appeal of the Missouri Default Judgment, including issuance of the appellate mandate. In the alternative, ACCEL

respectfully requests that the Court stay discovery pending resolution of that appeal and granting such other and further relief as the Court deems just and proper.

Dated: Trumbull, CT
July 1, 2026

ACCEL Compliance LLC

______________________________

Alexander G. Hopkins, Esq. (Ct. #32108)
Kiley Stackpole, Esq. (Ct. #32140)
Saxe Doernberger & Vita, P.C.
35 Nutmeg Drive, Suite 140
Trumbull, CT 06611
(203) 287-2100
ahopkins@sdvlaw.com
kstackpole@sdvlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this 1st day of July 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated in the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.



Alexander G. Hopkins, Esq. (Ct. #32108)